IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-118-D

WILLIAM M. GILCHRIST, and )
BETTINA W. GILCRHIST, )
 )
Plaintiffs, )
 )
v. ) **ORDER**
 )
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, )
 )
Defendant. )

On May 14, 2012, William Gilchrist ("Gilchrist" or "plaintiff") and Bettina Gilchrist (collectively "the Gilchrists" or "plaintiffs") filed an action in Carteret County Superior Court against Wells Fargo Bank, National Association ("Wells Fargo" or "defendant") and Substitute Trustee Services, Inc. ("STS") (collectively "defendants") on claims arising from an incorrectly recorded deed. Compl. [D.E. 1-1]. On June 14, 2012, Wells Fargo removed this action based on diversity jurisdiction [D.E. 1]. On June 21, 2012, defendants moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 8]. The Gilchrists responded in opposition [D.E. 15], and Wells Fargo replied [D.E. 16]. As explained below, the court grants in part and denies in part the motion to dismiss.

I.

In November 2007, the Gilchrists went to the Beaufort, North Carolina branch of Wachovia Bank, N.A. ("Wachovia" or "bank"), a predecessor in interest now merged with defendant Wells Fargo. Compl. ¶¶ 3, 6. The Gilchrists sought a loan and pledged approximately 1.81 acres of land

as collateral. Id. ¶ 6. At the direction of the bank, the Gilchrists obtained a survey of the 1.81 acre property and gave it to bank employees. Id. ¶ 8. After appraising the property, the bank offered to make a loan and invited the Gilchrists to visit the office to execute loan documents. Id. ¶ 9. On December 18, 2007, the Gilchrists went to the office and signed the documents, including a deed of trust that did not include a description of the collateral property. Id. ¶ 9–10, 12. Gilchrist asked whether the bank would include a description of the 1.81 acre property with the loan documents, and bank employees assured the Gilchrists that they would do so, and that the deed of trust would cover only the 1.81 tract. Id. ¶¶ 11, 14. Gilchrist informed those employees that the purpose of the loan was to enable the plaintiffs to sell additional lots of a subdivision to generate business income and thereby pay debts owed to Wells Fargo. Id. ¶ 12.

On January 15, 2008, Wells Fargo recorded the deed of trust and note executed by the plaintiffs, but never provided a copy of those documents to the Gilchrists. Id. ¶ 13. At the time, the Gilchrists believed that the recorded documents would comport with the bank employees' assurances. Id.

In May or June 2010, the Gilchrists entered into a contract to sell property to a buyer for $123,200, with the closing set for June 23, 2010. Id. ¶¶ 15–16. When the deed transferring the property to the buyer was taken to be recorded, Gilchrist discovered that the deed of trust recorded by the bank included a description of 5.58 acres of land, including the parcel the Gilchrists were selling and other property they had previously sold. Id. ¶ 16. The deed of trust, and particularly the description of the land, was "not drawn under the supervision of an attorney licensed to practice law" in North Carolina, but instead "by non-lawyers, who were employees of the bank, who lacked sufficient legal knowledge or were not authorized to prepare" the document. Id. ¶ 46.

On June 24, 2010, Gilchrist called the Beaufort Wachovia branch to ask why the description

2

was inaccurate, and the bank employees said they "did not know what they could do." Id. ¶ 17. The following day, June 25, 2010, Gilchrist visited the branch to determine why the inaccurate description had been recorded, but "received no satisfactory answer" and was given a phone number to call. Id. ¶ 18. Gilchrist called the phone number "and spoke to numerous individuals, none of which appeared to care or have any interest in clearing this matter up." Id. ¶ 19.

Gilchrist advised the bank employees in the Beaufort branch that the buyer had given him thirty days to correct the title defect and that time was of the essence. Id. ¶ 20. Those bank employees expressed that "they could not or would not help him," and Gilchrist was unable to get help by calling the phone numbers they provided. Id.

On July 7, 2010, Gilchrist "learned that a simple Deed of Release would cure the problem," but when he visited the Beaufort Wachovia branch, the bank employees "refused to be of any assistance or help." Id. ¶ 22. Gilchrist then had his own lawyer create a deed of release. Id. ¶ 23. When he brought it to the bank for execution, he explained that time was of the essence. Id. However, "Wells Fargo Bank refused to cooperate or help knowing that a delay would cause him to lose the sale of the property," and Gilchrist's pleas to bank employees were futile. Id. ¶ 24.

On August 1, 2010, the buyer terminated the contract and the sale was lost. Id. ¶ 25. On August 17, 2010, the Gilchrists and Wells Fargo executed a loan modification agreement that substituted a correct description of the 1.81 acre tract, [D.E. 1-1] 30–35, and Wells Fargo recorded the agreement. Compl. ¶¶ 26–27.

The Gilchrists complain that Wells Fargo "fraudulently induced [them] to sign the documents fully intending to use" an incorrect description of the property. Id. ¶ 28. Furthermore, the Gilchrists claim, it is "obvious that [the bank employees'] lack of effort in this matter was intentional and was to further perpetrate the fraud" because "there are a number of agents, employees and officers that

3

had the authority to have released the property from the Deed of Trust" but failed to do so. Id. ¶¶ 29–30.

In January 2011, Wells Fargo threatened to foreclose on the plaintiffs' property if they failed to make certain payments. Id. ¶ 31. The Gilchrists responded by requesting that Wells Fargo cover some of the damages resulting from the lost sale. Id. Wells Fargo refused to make any payments. Id.

After receiving notices of foreclosure, the Gilchrists' attorney contacted the attorneys for STS, the substitute trustee in foreclosure, and explained the alleged fraud. Id. ¶ 32. Wells Fargo offered to consider refinancing the Gilchrists' debt if they provided certain information. Id. ¶ 33. Several times, the plaintiffs submitted the information requested by a particular bank employee, only to find each time that the employee would later be replaced by a different employee; the new employee would request different and additional information, or would state that the previous information was outdated and needed to be updated. Id. ¶¶ 33–35. Wells Fargo "never made any firm commitment to the Plaintiffs." Id. ¶ 40. Instead, "all they ever did was continually request financial information, knowing full well they were not going to assist the Plaintiffs." Id. The Gilchrists concluded that Wells Fargo has "no intention" to offer any remedy for the alleged fraud. Id. ¶ 36.

The Gilchrists further allege that Wells Fargo "knew [they were] having financial difficulty as a result of" the failed property sale, and that the bank therefore knew it "could proceed with the foreclosure of the property and the Plaintiffs would be unable to cure any default or obtain legal redress." Id. ¶ 37. Nonetheless, STS continued the foreclosure proceedings in order to allow time for Wells Fargo to "work out and modify the obligations" of the Gilchrists. Id. ¶ 39. However, STS later informed the Gilchrists that Wells Fargo was "no longer going to work with" them and would

4

commence foreclosure. Id. ¶ 40.

The Gilchrists claim that the alleged fraud was done "with malice . . . or . . . in complete reckless disregard" for their rights. Id. ¶ 42. In addition, the Gilchrists allege that when Wells Fargo was informed of the erroneous recorded deed of trust, and was notified how to fix the problem promptly, the bank "was not forthcoming[,] knowing that . . . delay would cause the Plaintiffs to lose their sale," and that this act was done with malice or reckless disregard of the plaintiffs' rights. Id.

The Gilchrists allege that the acts of Wells Fargo are unfair and deceptive trade practices that entitle the plaintiffs to compensatory and punitive damages. Id. ¶¶ 43–44. Furthermore, they allege that when the bank employees prepared the deed of trust, they engaged in the unauthorized practice of law, and that they are entitled to damages including punitive damages. Id. ¶¶ 45–47. Finally, the Gilchrists ask for a preliminary and permanent injunction against foreclosure proceedings. Id. ¶¶ 48–53.

II.

In analyzing a 12(b)(6) motion, a court determines whether a complaint or counterclaim is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 563 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id.

A.

First, Wells Fargo moves to dismiss the Gilchrists' UDTPA claim and argues that (1) the claim is barred by the statute of limitations, Mem. Supp. Mot. Dismiss 4–8, and (2) the UDTPA claim is a contract claim improperly masquerading as a tort claim. Id. 9–12. The court examines each argument seriatim.

A claim for unfair and deceptive trade practices must be "commenced within four years after the cause of action accrues" or it is time-barred. N.C. Gen. Stat. § 75-16.2. Once the defendant asserts the statute of limitations, the plaintiff must prove that the claim is not time-barred. See Vail v. Vail, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951).

For UDTPA claims based on fraud, the action accrues "at the time the fraud is discovered or should have been discovered with the exercise of reasonable diligence." Nash v. Motorola Commc'ns & Elecs., Inc., 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989) (emphasis removed). With regard to fraud in real estate transactions, where the evidence is clear that a plaintiff "had both the capacity and opportunity" to discover a discrepancy in a deed but failed to do so, the court may find a lack of reasonable diligence as a matter of law. Grubb Props., Inc. v. Simms Inv. Co., 101 N.C. App. 498, 501, 400 S.E.2d 85, 88 (1991). However, "[w]hen a discrepancy or mistake in a deed . . . should be discovered in the exercise of reasonable diligence depends on the circumstances of each case and is ordinarily a question of fact for the jury." Id., 400 S.E.2d at 88. "[M]ere registration of a deed . . . indicating on the face of the record facts disclosing the alleged fraud, will not, standing alone, be imputed for constructive notice of the facts constituting the alleged fraud." Vail, 233 N.C. at 117, 63 S.E.2d at 208. Instead, there also must be "facts and circumstances sufficient to put the defrauded person on inquiry which, if pursued, would lead to the discovery of the facts constituting the fraud." Id.; see Modlin v. Roanoke R. & Lumber Co., 145 N.C. 218, 58

6

S.E. 1075, 1078 (1907) (holding that the statute of limitations did not begin running upon recording of a deed where, despite contrary assurances from the defendant, the deed included more land than agreed upon, and there were no other facts putting the plaintiff on notice of the fraud); Cascadden v. Household Realty Corp., 196 N.C. App. 517, 675 S.E.2d 155, 2009 WL 1054035, at *2 (2009) (unpublished table decision) (citing Vail approvingly but distinguishing it on facts that put the plaintiff on notice of fraud). On the other hand, a person may reasonably fail to inquire further when the circumstances do not suggest fraud has occurred. See, e.g., N.C. Nat'l Bank v. Carter, 71 N.C. App. 118, 124, 322 S.E.2d 180, 184–85 (1984) (holding that the statute of limitations did not bar a claim where the plaintiff "had a long and satisfactory business relationship" with the defendant bank and so had sufficient confidence "to believe the representations made by its bank officers" and no subsequent events put him on notice to inquire into property boundaries).

Wells Fargo cites three cases in support of the contention that the Gilchrists were on constructive notice of the inaccurate description in the deed of trust as of January 15, 2008, the date it was recorded. First, Wells Fargo cites Fulcher v. United States, which dealt not with knowledge of the contents of recorded deeds but with physical conditions on land. See 696 F.2d 1073, 1076–77 (4th Cir. 1982). Next, Wells Fargo cites In re Stone, a case in which a plaintiff in bankruptcy claimed that a deed mistakenly omitted the plaintiff's wife as a co-owner. No. 10-05985-8-JRL, 2011 WL 5909158 (Bankr. E.D.N.C. Aug. 15, 2011) (unpublished). The bankruptcy court found that the plaintiff's effort to reform the deed was barred by the statute of limitations because the plaintiffs could have discovered the defect long before. Id. at *5. Stone is distinguishable for a number of reasons, including that (1) the plaintiff-husband was the purchaser of the property and so should have had notice of the deed's contents; (2) the plaintiff-husband held himself out to creditors for years as the sole owner of the property; and (3) tax records, notices, and internal business records

7

of the plaintiff-husband showed only the plaintiff-husband as the owner. Id. at *4–5. Here, according to the complaint, Wells Fargo, not the Gilchrists, drafted and recorded the deed of trust did not send a copy to the Gilchrists. Furthermore, the Gilchrists had no knowledge of its contents. Moreover, according to the complaint, the Gilchrists did not try to obtain a loan on the 5.58 acre tract, but specifically limited the encumbrance to the 1.81 acre tract. Finally, no record other than the deed of trust itself would have put the Gilchrists on notice of the error. To the extent that Wells Fargo reads Stone to impute notice to a plaintiff based simply on the availability of a recorded deed, the argument fails. See Vail, 233 N.C. at 117, 63 S.E.2d at 208.

Wells Fargo next cites Grubb for the proposition that "the plaintiff had constructive notice of [an] error because a simple review of the legal description in the deed . . . would have revealed the error." Mem. Supp. Mot. Dismiss 7. This statement contradicts North Carolina law. See Vail, 233 N.C. at 117, 63 S.E.2d at 208. Like Stone, Grubb cannot bear the weight that Wells Fargo places on it. The plaintiff in Grubb was a grantee who received and failed to review the description of land in the contract for sale, the deed, an affidavit describing the land, an assignment of the defendant's interests in leases, equipment, plans, and surveys of the property, and a bill of sale for personal property on the land. 101 N.C. App. at 499–500, 400 S.E.2d at 87. In contrast, the Gilchrists allege that they never received any documents containing the inaccurate description of the land under the deed of trust. Compl. ¶ 13. Although the Grubb court did attribute to the plaintiff a "positive duty to exercise reasonable care in describing" land for sale, 101 N.C. App. at 502, 400 S.E.2d at 88, nothing (at this stage of the case) suggests that the Gilchrists did not own the land they attempted to sell or did not correctly describe the 1.8 acre tract to the bank.

Furthermore, the act of recording the deed of trust was Wells Fargo's responsibility and for Wells Fargo's benefit. Wells Fargo delayed recording the deed for one month. Compl. ¶ 13. Based

8

in part on their "long term business relationship" with Wachovia, Compl. ¶ 5, the Gilchrists plausibly allege that they reasonably relied on the representation by bank employees that the bank would use the correct property description. See Carter, 71 N.C. App. at 124, 322 S.E.2d at 184–85. Thus, Wells Fargo has failed to show that the Gilchrists' UDTPA claim accrued on January 15, 2008. See Vail, 233 N.C. at 116, 63 S.E.2d at 207. Rather, the Gilchrists plausibly allege that they did not actually discover the erroneous deed of trust until June 23, 2010. Compl. ¶ 16. Therefore, the court declines to dismiss the UDTPA claim as untimely.

Next, Wells Fargo argues that plaintiffs are improperly attempting to recast a breach of contract claim into a UDTPA claim. The North Carolina Unfair and Deceptive Trade Practices Act makes unlawful the use of unfair or deceptive trade practices and provides a cause of action for any person injured by such practices. N.C. Gen. Stat. §§ 75-1.1, 75-16. In order to state a UDTPA claim, the plaintiff must plausibly allege that (1) the defendant committed an unfair or deceptive act or practice, (2) the act or practice was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. N.C. Gen. Stat. §§ 75-1.1, 75-16; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). An act is deceptive if it "has a tendency to deceive." Dalton, 353 N.C. at 656, 548 S.E.2d at 711. An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation omitted) (emphasis removed). Whether an act is unfair or deceptive is a question of law for the court. Dalton, 353 N.C. at 656, 548 S.E.2d at 711. "Commerce" includes "all business activities" except for professional services, employer-employee disputes, and securities transactions. N.C. Gen. Stat. § 75-1.1; Dalton, 353 N.C. at 656–57, 548 S.E.2d at 711. The plaintiff also must allege "egregious or aggravating circumstances" to trigger the

9

Act. Dalton, 353 N.C. at 657, 548 S.E.2d at 711.

Mere breach of contract, even a willful breach, is not an unfair or deceptive practice under the UDTPA. See Ellis v. La.-Pac. Corp., 699 F.3d 778, 787–88 (4th Cir. 2012); PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998); Carcano, 200 N.C. App. at 172, 684 S.E.2d at 50; Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). In contrast, fraud "necessarily constitutes a violation of the prohibition against unfair or deceptive trade practices." Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 470, 343 S.E.2d 174, 180 (1986); see Ellis v. N. Star Co., 326 N.C. 219, 225–26, 388 S.E.2d 127, 131 (1990). Fraud can be proven by showing "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party." Vail, 233 N.C. at 113, 63 S.E.2d at 205. However, a UDTPA claim does not require proof of intent to deceive or a showing of bad faith, but only that the defendant's behavior would tend to deceive members of the consuming public. See Marshall v. Miller, 302 N.C. 539, 544–48, 276 S.E.2d 397, 400–03 (1981).

The Gilchrists have plausibly alleged a UDTPA claim. As to the first element, the complaint alleges that the defendant's employees falsely represented that only the 1.81 acre property would be encumbered under the deed of trust when in fact the bank recorded a document purporting to encumber 5.58 acres of land. Compl. ¶¶ 11, 16. As alleged, this act would tend to deceive members of the public. The complaint plausibly alleges that the Gilchrists were deceived by and relied on the statements, and that they would not have gone forward with the loan if they knew or believed that more than 1.81 acres would be encumbered. Id. ¶¶ 6, 9, 11, 12, 14. As to the second element, representations and recording of documents by bank employees in the course of mortgaging a

10

property are "in and affecting commerce." See HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). Finally, as to the third element, the Gilchrists plausibly allege that the misrepresentation and recording of the erroneous deed of trust proximately caused them to lose a sale of property and proceeds of $123,200. Compl. ¶¶ 24–25. Thus, plaintiffs have properly pleaded a UDTPA claim.

In opposition, Wells Fargo characterizes the Gilchrists' claim as a breach of contract claim "because the Gilchrists' alleged injury arises out of a commercial and contractual relationship." Mem. Supp. Mot. Dismiss 9. More specifically, "[t]he damages the Gilchrists seek arise out of Wells Fargo[]'s alleged failure to perform according to the parties['] agreement regarding the legal description in the Deed of Trust." Id. 10. Wells Fargo then notes that a mere breach of contract does not amount to a UDTPA claim without a further assertion of egregious or aggravating circumstances. Id. 11–12.

Plaintiffs' UDTPA claim is not a contract claim. The complaint does not allege that Wells Fargo breached any contract between the parties. The bargained-for exchange in this case was for the Gilchrists to give the bank a security interest in the 1.8 acre property in return for money. Recording the deed of trust was a separate activity that the bank undertook for its own benefit. The plaintiffs are not claiming they did not receive funds from the bank. Instead, the complaint alleges that the bank's misrepresentations, deliberately erroneous deed of trust, and subsequent inaction amounted to deceptive or unfair practices. Specifically, the Gilchrists allege that the bank employees' assertions that they would include the correct description of the 1.8 acre tract with the deed of trust were misrepresentations upon which the Gilchrists relied in deciding to complete the loan. Compl. ¶ 11. Such misrepresentations may support a UDTPA claim. See Hardy v. Toler, 288 N.C. 303, 311, 218 S.E.2d 342, 347 (1975); Mapp v. Toyota World, Inc., 81 N.C. App. 421, 426–27,

11

344 S.E.2d 297, 301, disc. rev. denied, 318 N.C. 283, 347 S.E.2d 464 (1986); Media Network, Inc. v. Mullen Advertising, Inc., No. 05 CVS 7255, 05 CVS 15428, 2007 NCBC 1, 2007 WL 2570175, at *15–16 (N.C. Super. Ct. Jan. 19, 2007) (unpublished) (Diaz, J.) (holding that a misrepresentation during the parties' contract negotiations that "smacks of fraud in the inducement" can be the basis for a UDTP claim), aff'd, 197 N.C. App. 433, 454, 678 S.E.2d 671, 684–85 (2009) ("Defendant argues that this dispute is truly a commercial contract claim and does not constitute a UDTP violation. . . . [W]e disagree."). Whether plaintiffs can survive summary judgment on their UDTPA claim is an issue for another day. Thus, the court denies Wells Fargo's motion to dismiss the UDTPA claim.

B.

Wells Fargo moves to dismiss the Gilchrists' claim for unauthorized practice of law and argues that the plaintiffs failed to state a claim upon which relief can be granted. In support, Wells Fargo makes two arguments (1) the claim is time-barred under the applicable statute of limitations, Mem. Supp. Mot. Dismiss 4–5, and (2) North Carolina law did not recognize a private cause of action for unauthorized practice of law at the time the alleged violation occurred, and the statute cannot be applied retroactively. Id. 8–9.

North Carolina recently recognized a private cause of action to recover damages resulting from the unauthorized practice of law. See Act of June 27, 2011, 2011 N.C. Sess. Laws 336, § 7 (codified at N.C. Gen. Stat. § 84-10.1) (effective Oct. 1, 2011). Before October 1, 2011, there was no private cause of action in North Carolina for the unauthorized practice of law. See Mills v. Carolina Cemetery Park Corp., 242 N.C. 20, 28, 86 S.E.2d 893, 899 (1955); Baars v. Campbell Univ., Inc., 148 N.C. App. 408, 421–22, 558 S.E.2d 871, 879 (2002). The Supreme Court of North Carolina has made clear that a statute creating a new cause of action will not apply to events that

12

occurred before the effective date of the statute. Smith v. Mercer, 276 N.C. 329, 337–38, 172 S.E.2d 489, 494–95 (1970) ("Ordinarily, an intention to give a statute a retroactive operation will not be inferred. If it is doubtful whether the statute . . . was intended to operate retrospectively, the doubt should be resolved against such operation. . . . [T]he statute . . . will be regarded as operating prospectively only . . . where the effect of giving it a retroactive operation would be to . . . create a new liability in connection with a past transaction.") (quotation omitted) (emphasis removed). Because no private cause of action existed at the time of the alleged violation, plaintiffs have failed to state a claim upon which relief can be granted. Thus, the court need not address the argument concerning the statute of limitations and grants Wells Fargo's motion to dismiss the claim for the unauthorized practice of law.

III.

In sum, defendant's motion to dismiss [D.E. 8] is GRANTED in part and DENIED in part. The court GRANTS the motion to dismiss the claim for unauthorized practice of law, but DENIES the motion to dismiss the UDTPA claim.

SO ORDERED. This 4 day of February 2013.

JAMES C. DEVER III
Chief United States District Judge

13