IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-118-D

| | |
|---|---|
| WILLIAM M. GILCHRIST, and ) | |
| BETTINA W. GILCRHIST, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WELLS FARGO BANK, NATIONAL ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

On May 14, 2012, William Gilchrist ("Gilchrist" or "plaintiff") and Bettina Gilchrist (collectively "the Gilchrists" or "plaintiffs") filed an action in Carteret County Superior Court against Wells Fargo Bank, National Association ("Wells Fargo" or "defendant") concerning an incorrectly recorded deed. See Compl. [D.E. 1-1]. On June 14, 2012, Wells Fargo removed this action based on diversity jurisdiction. See [D.E. 1]. On February 3, 2014, Wells Fargo moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the one claim remaining in this case. See [D.E. 31]. The Gilchrists responded in opposition, see [D.E. 38], and Wells Fargo replied. See [D.E. 39]. As explained below, Wells Fargo did not violate the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). Accordingly, the court grants Wells Fargo's motion for summary judgment.

I.

In November 2007, the Gilchrists went to the Beaufort, North Carolina branch of Wachovia Bank, N.A. ("Wachovia" or "bank"), a predecessor in interest now merged with defendant Wells Fargo. The Gilchrists sought a loan and discussed using real property known as the Gilchrist

Homeplace as collateral. See [D.E. 31-4], Wm. Gilchrist Dep. 15–18, 20–21. William Gilchrist inherited the Gilchrist Homeplace in 1989, and it then encompassed approximately 32 acres. See id. Thereafter, William Gilchrist sold various parcels. See id. 17–18. By 2009, the Gilchrist Homeplace encompassed approximately two acres, including the Gilchrists' house. See id.

According to William Gilchrist, he told the bank's representative that he wanted to encumber only 1.81 acres around his house because he wanted to try to sell some of the other property. See id. 20. The Gilchrists did not, however, provide a written description of the 1.81 acres to the bank. See id. 20–21. Two days before the closing, William Gilchrist read the proposed closing documents and noticed that the closing documents lacked a description of the property securing the loan. See id. William Gilchrist then told the bank's representative that the property description would conform with the survey that his surveyor prepared and that he gave to the bank. See [D.E. 38], Wm. Gilchrist Dep. 17, 20, 23–24; Wm. Gilchrist Dep. Ex. 4 [D.E. 31-4] 28.[1] The survey that William Gilchrist gave to the bank stated that the legal description for the property depicted in the survey was located at Deed Book 631, Page 102 of the Carteret County Register of Deeds. See Wm. Gilchrist Dep. Ex. 4.

On December 18, 2007, the Gilchrists closed their loan. See [D.E. 31-4], Wm. Gilchrist Dep. 25–26; [D.E. 31-3], Kruse Decl. ¶¶ 4–6 & Ex. A. The Note and Deed of Trust stated that the property at 141 Howland Parkway in Beaufort, North Carolina would secure the loan. See Kruse Decl. Exs. A & B. At the closing, the Gilchrists signed a Borrower's Limited Title Agreement, in which they acknowledged that the bank would add the legal description for the property securing the Note and the Deed of Trust at a later date. See id. ¶¶ 7–8 & Ex. C. William Gilchrist read the

---

[1] Portions of William Gilchrist's deposition appear at docket entries 31-4 and 38.

document before signing it. See [D.E. 31-4], Wm. Gilchrist Dep. 20. At the closing, William Gilchrist again referenced the survey that he had provided to the bank. See id. 20–21, 25 & Dep. Ex. 4. William Gilchrist told the bank that the survey described the land that the bank was to use to secure the loan. See id.

After the closing, the bank asked FiServ Solutions, Inc. ("FiServ") to obtain the legal description of the property securing the loan, to add the description of the property to the Deed of Trust, and to file the Deed of Trust with the Carteret County Register of Deeds. See Kruse Decl. ¶¶ 9–11. FiServ used the survey that the Gilchrists provided, reviewed and added the property description from Deed Book 631, Page 102 of the Carteret County Register of Deeds Book to the Deed of Trust, and publicly filed the Deed of Trust in January 2008. Compare Kruse Decl. ¶¶ 9–11 & Ex. D, with [D.E. 31-1], Numbers Decl. Ex. C; see also [D.E. 31-4], Wm. Gilchrist Dep. 27.

In 2009, the Gilchrists obtained permission from Carteret County to subdivide portions of the Gilchrist Homeplace into three parcels. See [D.E. 31-4], Wm. Gilchrist Dep. 35 & Dep. Ex. 5. Before obtaining permission, the Gilchrists did not review a copy of their Deed of Trust. See Wm. Gilchrist Dep. 29–30.

In May 2010, the Gilchrists entered into a contract to sell a parcel of their property known as Lot 7 to a buyer for $123,200. See id. 36–40. The parties scheduled the closing for June 23, 2010. See id. 38. When William Gilchrist took the deed transferring Lot 7 to be recorded, he discovered that the Deed of Trust recorded in January 2008 included a description of 5.58 acres of land. The description included not only the land encompassing Lot 7, but also other property from the Gilchrist Homeplace, including property that the Gilchrists had sold before closing the loan in December 2007. See id. 40–41. The parties then delayed the closing on Lot 7. See id. 40–41, 43–44.

3

William Gilchrist called the bank, and told the bank that the December 2007 loan was intended to encumber only 1.81 acres of his property, not the whole property. See id. 43–44. The bank then began investigating the issue. See Kruse Decl. ¶¶ 12–14.

On August 1, 2010, while the bank was investigating, the lawyer for the couple who intended to purchase Lot 7 wrote to the Gilchrists and terminated the purchase agreement for Lot 7. See [D.E. 31-2], Wesley Collins Decl. ¶ 5. The lawyer gave three independent reasons for terminating the contract: (1) the lawyer did not approve the restrictive covenants applicable to Lot 7; (2) the lawyer did not approve the survey of Lot 7; and, (3) the Gilchrists were not able to provide clear title to Lot 7. See id. & Ex. A.

On August 17, 2010, the Gilchrists and Wells Fargo executed a loan modification agreement that substituted a correct description of the 1.81-acre tract, see [D.E. 1-1] 30–35, and Wells Fargo recorded the agreement. See Kruse Decl. ¶ 13. The Gilchrists then relisted Lot 7, and sold it in 2011 for $100,000. See [D.E. 31-4], Wm. Gilchrist Dep. 51.

The Gilchrists allege that the bank "fraudulently induced" them to sign the documents in December 2007 and that the bank intended to use an incorrect description of their property to secure the December 2007 loan. See Compl. ¶ 28. The Gilchrists also claim that the bank failed promptly to rectify the incorrect description and thereby perpetrated the fraud and improperly thwarted their effort to sell Lot 7 for $123,200. See id. ¶¶ 24–25, 29. The Gilchrists seek relief under the UDTPA. See id. ¶¶ 43–44.

II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

4

247–48 (1986). In evaluating a motion for summary judgment, the court views the evidence and the inferences drawn from that evidence in the light most favorable to the nonmoving party. See Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam); Scott v. Harris, 550 U.S. 372, 378 (2007).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. The moving party must show the absence of a "dispute[] over [a] fact[] that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). The nonmoving party must do more than present a "scintilla of evidence" in its favor. Anderson, 477 U.S. at 252. Rather, the nonmoving party must present "sufficient evidence" such that reasonable jurors could find for it. Id. at 249. Accordingly, a court may grant summary judgment if the nonmoving party's evidence is "merely colorable" or "not significantly probative." Id. at 249–50.

The UDTPA makes unlawful the use of unfair or deceptive trade practices and provides a cause of action for any person injured by such practices. See N.C. Gen. Stat. §§ 75-1.1, 75-16. A plaintiff asserting a UDTPA claim must prove that (1) the defendant committed an unfair or deceptive act or practice, (2) the act or practice was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. See id.; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). An act is deceptive if it "has a tendency to deceive." Dalton, 353 N.C. at 656, 548 S.E.2d at 711. An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of... power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41,

5

50 (2009) (emphasis and quotation omitted). Whether an act is unfair or deceptive is a question of law for the court. See Dalton, 353 N.C. at 656, 548 S.E.2d at 711. "Commerce" includes "all business activities" except for professional services, employer–employee disputes, and securities transactions. N.C. Gen. Stat. § 75-1.1(b); see Dalton, 353 N.C. at 656–57, 548 S.E.2d at 711. To prevail under the UDTPA, a plaintiff also must prove "egregious or aggravating circumstances." Dalton, 353 N.C. at 657, 548 S.E.2d at 711.

Mere breach of contract, even a willful breach, is not an unfair or deceptive practice under the UDTPA. See, e.g., Ellis v. La.-Pac. Corp., 699 F.3d 778, 787–88 (4th Cir. 2012); PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998); Carcano, 200 N.C. App. at 172, 684 S.E.2d at 50; Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). In contrast, fraud "necessarily constitutes a violation of the prohibition against unfair or deceptive trade practices." Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 470, 343 S.E.2d 174, 180 (1986); see Ellis v. N. Star Co., 326 N.C. 219, 225–26, 388 S.E.2d 127, 131 (1990). A plaintiff can prove fraud by showing "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party." Vail v. Vail, 233 N.C. 109, 113, 63 S.E.2d 202, 205 (1951). However, a UDTPA claim does not require proof of intent to deceive or a showing of bad faith, but only that the defendant's behavior would tend to deceive members of the consuming public. See, e.g., Marshall v. Miller, 302 N.C. 539, 544–48, 276 S.E.2d 397, 400–03 (1981).

Here, as a matter of law, the bank did not commit an unfair or deceptive act or practice. See, e.g., Caper Corp. v. Wells Fargo Bank, N.A., No. 13-2152, 2014 WL 3511928, at *11–12 (4th Cir. July 17, 2014) (per curiam) (unpublished); Canady v. Crestar Mortg. Corp., 109 F.3d 969, 975–76

(4th Cir. 1997); Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 228–29 (N.C. 2013); Dalton, 353 N.C. at 656–58, 548 S.E.2d at 710–12; Carcano, 200 N.C. App. at 172, 684 S.E.2d at 50; Opsahl v. Pinehurst Inc., 81 N.C. App. 56, 68–70, 344 S.E.2d 68, 76–77 (1986). Before the closing, William Gilchrist provided the bank a survey that his surveyor prepared. See [D.E. 31-4], Wm. Gilchrist Dep. 20–21, 25, 30. William Gilchrist gave the survey to the bank to demonstrate the land that the loan was to encumber. See id. The Notes section in the survey states that the description for the property depicted in the survey is in Carteret County Deed Book 631, Page 102. See id. Ex. 4. Consistent with the loan closing documents, FiServ added the legal description in the Carteret County Deed Book 631, Page 102 to the legal description in the Deed of Trust and publicly filed the Deed of Trust in January 2008. Compare Kruse Decl., Ex. D., with Numbers Decl., Ex. C.

At most, the transaction bespeaks a mutual mistake, not an unfair or deceptive act or practice. Notably, before the closing, neither the bank nor the Gilchrists ever wrote down the specific description of the 1.81 acres that was to secure the note. Instead, the bank received and relied on the survey that William Gilchrist provided. Moreover, the closing documents authorized the bank to add the property's description after the closing, and the property description tracks what is in Carteret County Deed Book 631, Page 102. Furthermore, the bank never sought to hide the property description in the Deed of Trust. Rather, the bank had FiServ publicly record the Deed of Trust. In addition, once the Gilchrists brought the mistake to the bank's attention on June 23, 2010, the bank promptly investigated the matter. On August 17, 2010, the bank and the Gilchrists remedied the mistake, substituted a correct description of the 1.81-acre tract, and recorded the correction. Although the Gilchrists offer the opinion testimony of a banker from First Citizens Bank who opines that First Citizens Bank would have rectified the mistake in approximately one week instead of eight weeks ([D.E. 38] 38–43), such opinion testimony does not create a genuine issue of

material fact under the UDTPA. See, e.g., Canady, 109 F.3d at 976. On this record, the bank did not violate the UDTPA. See, e.g., Caper Corp., 2014 WL 3511928, at *11–12; Canady, 109 F.3d at 975–76; Bumpers, 747 S.E.2d at 228–29; Dalton, 353 N.C. at 656–58, 548 S.E.2d at 710–12; Carcano, 200 N.C. App. at 172, 684 S.E.2d at 50; Opsahl, 81 N.C. App. at 68–70, 344 S.E.2d at 76–77. Accordingly, the court grants Wells Fargo's motion for summary judgment. In light of this conclusion, the court need not address Wells Fargo's alternative arguments concerning the statute of limitations and proximate cause.

III.

In sum, defendant's motion for summary judgment [D.E. 31] is GRANTED. The court also GRANTS defendant's motion to strike plaintiffs' surreply brief [D.E. 41]. The local rules do not permit a party to file a surreply without leave of court, and plaintiffs never obtained leave of court. The clerk shall close the case.

SO ORDERED. This 19 day of August 2014.

JAMES C. DEVER III
Chief United States District Judge